## LOWE v. MICHIGAN FIRE & MARINE INS. CO.

### No. 4712.

Court of Civil Appeals of Texas. Beaumont.

Dec. 28, 1950.

Rehearing Denied Jan. 24, 1951.

V. A. Collins, Livingston, for appellant.

Fulbright, Crooker, Freeman & Bates, Houston, for appellee.

WALKER, Justice.

This action was brought on a fire insurance policy for $1500, issued by appellee. Appellant Lowe is the plaintiff and appellee insurance company is the defendant.

The policy was issued to one C. S. Price and it insured Price against loss by fire of a dwelling house which stood on a two-acre tract of land. Price conveyed the land to plaintiff and, with defendant's consent, assigned the policy to plaintiff. Plaintiff subsequently erected another small building on the land and, while the policy was in force in his favor, conveyed the land to one E. M. Wales by a general warranty deed, reserving, however, a vendor's lien to secure the payment of part of the purchase price. The total purchase price was $7500. Wales paid plaintiff $4,000 when the conveyance was made to him by plaintiff, and he made three promissory notes to plaintiff for the balance of the price. These notes matured one, two and three years, respectively, after the date of plaintiff's deed, and it was to secure the payment of these notes that plaintiff reserved the vendor's lien.

Wales took possession of the property after it was conveyed to him and rented the building which plaintiff had erected. The testimony does not show what use Wales made of the house which was insured by the policy in suit.

While Wales was in possession of the property and before any notes for purchase money had matured, the house insured by the policy in suit was totally destroyed by fire. Wales did not communicate with plaintiff when the first of his notes for purchase money came due, and after waiting a few days without hearing from Wales plaintiff filed suit against Wales to rescind the sale and recover the land. Wales subsequently reconveyed the property to plaintiff in consideration of plaintiff's cancellation of the three notes for purchase money, and plaintiff's suit against Wales was dismissed. Plaintiff kept the $4,000 which Wales had paid to him at the time of the sale.

After Wales' reconveyance to him plaintiff brought this suit against defendant to recover the amount of the policy insuring the house which was destroyed by fire.

The policy in suit contains the following condition: "Conditions Suspending or Restricting Insurance. Unless otherwise provided in writing added hereto, this Company (meaning the defendant) shall not be liable for loss occurring * * *: (d). Following a change in ownership of the insured property * * *."

Plaintiff did not inform the defendant of his transaction with Wales before the fire occurred, and the defendant did not learn of this transaction until after the destruction of the house insured by the policy in suit. Plaintiff did not assign the policy, but has had possession of it, and no change has been made in it, since its assignment to him by Price.

Defendant plead in bar of plaintiff's suit that the condition quoted above had been breached by plaintiff.

The cause was tried to the court sitting without a jury and the trial court rendered judgment that plaintiff take nothing. The trial court filed findings of fact and conclusions of law, and in the first conclusion held that plaintiff's transaction with Wales constituted a breach of the condition quoted above and that this breach was a defense in bar to plaintiff's suit on the policy. From the trial court's judgment the plaintiff has appealed.

By various Points of Error plaintiff has assigned error to the trial court's conclusion of law just summarized, and in support of these points makes the two arguments now to be discussed.

Plaintiff's first argument is this: that the conveyance to Wales did not change the ownership of the insured property and plaintiff did not breach the condition quoted from the policy because the plaintiff expressly reserved the vendor's lien in his deed to Wales and, by virtue of this reservation, remained the owner of the legal title to the property insured.

We overruled this contention and hold that plaintiff's transaction with Wales resulted in a change of ownership within the meaning of the condition quoted from the policy. While it is sometimes said of the vendor who reserves the vendor's lien in his deed that he owns the superior title to the property conveyed, this "superior title" is held by him only as security for the payment of the purchase price while the right to the possession and the benefit of the property is vested in the vendee.

Thus in Stephens v. Motl, 82 Tex. 81, at page 86, 18 S.W. 99, an action in Trespass to Try Title in which the main issue was boundary, the appellant held under Midkiff and appellee held under Rucker, who had reserved the vendor's lien to secure a part of the purchase price. Before the price was paid, Rucker sued Midkiff for the land and had judgment rendered against him. Appellee, Rucker's vendee, was not a party to the suit. Appellant offered this judgment as proof of res adjudicata against appellee, but the judgment was excluded. On appeal the Commission of Appeals held that appellee and not his vendor Rucker was the proper person to bring the suit and that the judgment against appellee's vendor was not res adjudicata against appellee in the action at bar. Said the Commission, 82 Tex. at page 86, 18 S. W. at page 99: "It is contended that by this judgment the claim of Motl to the land became res adjudicata, because Rucker held the superior title thereto, from the fact that the purchase money had not been paid. Notwithstanding the reservation of the vendor's lien in the deed, Motl had the right to the possession of the land under his contract of purchase, and title was vested in him, subject only to be defeated by rescission for failure to pay the purchase money, and it might become perfect on payment of the notes. He was then the proper party to bring a suit for the land. Rucker did not have the right of possession. In an action of trespass to try title the petition must state that the plaintiff was in possession of the land when the right of action accrued, or when ousted, or that he was entitled to such possession. Rev.St. art. 4786 [Vernon's Ann.Civ.St.

art. 7366]. Although he held the superior title as between himself and his vendee, Rucker stood in the relation of a mortgagee of the land out of possession, and not entitled to possession until default on part of the vendee, and a rescission by him of the contract, or a foreclosure."

In Carey v. Starr, 93 Tex. 508, 56 S.W. 324, the facts were that Starr and wife had conveyed tracts of land to purchasers, reserving the vendor's lien to secure the unpaid purchase price. Each deed and note provided that the grantee would not remove timber from the land nor permit others to do so, but the various grantees sold timber on the land to Carey, who converted it into ties and sold these ties to the M. K. & T. Ry. Company. Starr and wife learned of these transactions and by agreement with their respective grantees rescinded each sale and cancelled the various notes given for the purchase price. However, the parties stipulated that Starr and wife reserved the right to sue for the value of the timber and the ties; and Starr and wife then sued Carey and the railway company to recover this item. A judgment in their favor by the Court of Civil Appeals was reversed by the Supreme Court on the ground that they had only the rights of mortgagees out of possession and, 93 Tex. at page 515, 56 S.W. at page 326, that "the amount of the debts secured by the vendor's lien constituting the measure of the vendor's rights in the land, when the debts were satisfied by a reconveyance of the property to Starr and wife their right of action for the removal of timber terminated." As authority for the conclusion that Starr and wife were to be treated as mortgagees out of possession, the Court made the quotation from Stephens v. Motl, which we have set out, and then said, 93 Tex. at page 514, 56 S.W. at page 325: "The title that remains in the vendor in such transaction is superior, in the sense that the vendee cannot assert his title against the vendor unless he has paid the purchase money. From the time it was first announced that the reservation of lien in a deed reserved the superior title to the vendor, there has been a continuous and persistent effort to push it to the limit

of executory contracts for the sale of land, but this court has steadily resisted that effort, and has uniformly limited the vendor's title to the character of security for the purchase-money debt; and when the debt has been paid the title of the vendor ceases."

In Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607, the court held that a reservation of a vendor's lien did not defeat a reservation of title to the minerals, made in the same deed. The Court quoted from Carey v. Starr language quoted above and stated in detail various incidents of the vendee's title under a reservation of the vendor's lien, from which we quote the following, 113 Tex. at page 256, 254 S.W. at page 299: "We will first inquire as to whether or not the deed from Kennedy to Sanches was an executory contract in the sense that it was ineffective to sever the minerals in the land from the remainder. The opinions of this court have uniformly referred to deeds of the character here involved as executory contracts in which the legal title to the land conveyed remains in the vendor until the purchase-money notes are paid. Counsel for the Shear Company cite Foster v. Powers, 64 Tex. [247] 249; Farmers Loan & Trust Co. v. Beckley, 93 Tex. 267, 54 S.W. 1027; and Russell v. Kirkbride, 62 Tex. 455, in support of the doctrine. Many other cases might have been mentioned. But an examination of the opinions of this court shows that, while the deed here involved is an executory contract as between the vendor and vendee, and those in privity with them, it is so only in the sense that the naked legal title remains in the vendor, to be automatically vested in the vendee upon payment of the purchase money, and that in all other respects, between such parties, and in all respects in so far as strangers to the transaction are concerned, the deed is not executory, but is an executed contract."

Finally, in Yates v. Darby, 133 Tex. 593 at page 600, 131 S.W.2d 95, at page 99, the Court reiterated, in the following language, the position formerly taken: "This court has uniformly held that the title of the vendor, who reserves in his deed a lien for the purchase money, is superior in the sense that the vendee cannot assert his title against the vendor unless he has paid the purchase money, that the vendor's title is limited to the character of security for the purchase money debt, and that when the debt has been paid the title of the vendor ceases and that of the vendee 'becomes absolute, as to the vendor, without any action on his part' ".

Under these decisions Wales and not the plaintiff must be regarded as the "owner" of the insured property within the meaning of the condition quoted from the policy in suit, and under like policy provisions it has been so held by the Courts of Civil Appeals. Quoting from Humphrey-Mexia Co. v. Gammon, 113 Tex. at page 258, 254 S.W. at page 301: "The vendee in such a deed (that is, like that plaintiff made to Wales) is the entire, sole, and unconditional 'owner' of the property within the meaning of these terms as used in a fire insurance policy. Liverpool, etc., Ins. Co. v. Ricker, 10 Tex.Civ.App. 264, 31 S.W. 248; Hamburg-Bremen Fire Ins. Co. v. Ruddell, 37 Tex.Civ.App. 30, 82 S.W. [826] 827; Wright v. Hartford Fire Ins. Co., 54 Tex. Civ.App. 6, 118 S.W. 191, 192." If Wales was the "entire, sole, and unconditional 'owner'" of the insured property, the plaintiff could not have been the same.

We conclude that since a change of ownership had occurred within the meaning of the condition quoted from the policy, of which defendant had had no notice until after the insured property had been destroyed by fire, the condition had been breached. This condition was valid and enforcible and plaintiff's violation of it thus was a defense in bar to his suit on the policy. Concerning the validity and enforcibility of the condition, see: 24 Texas Juris. 965, Sections 203 and 204; Rio Grande Nat'l Life Ins. Co. v. Hardware Dealers Mut. Fire Ins. Co., Tex.Civ.App., 209 S.W.2d 654. The insurer under a fire policy has an interest in the personality of the individual whose property was insured. See: Crescent Ins. Co. v. Camp, 64 Texas 521 at page 528; National Fire Ins. Co. v. Carter, Tex.Com.App., 257 S.W. 531; Fidelity Union Fire Ins. Co. v. Pruitt, Tex.

172

Com.App., 23 S.W.2d 681; St. Paul Fire & Marine Ins. Co. v. Culwell, Tex.Com. App., 62 S.W.2d 100; Franklin Fire Ins. Co. v. Shadid, Tex.Com.App., 68 S.W.2d 1030.

Plaintiff's second argument in support of the Points of Error attacking the trial court's conclusion that the condition quoted from the policy had been breached and that this breach was a defense in bar of plaintiff's suit is founded upon the following language in Insurance Co. of North America v. O'Bannon, 109 Tex. 281, at page 286, 206 S.W. 814, at page 815, 1 A. L.R. 1407: "It is settled law in this state that a fire insurance policy is not violated by a change of title—'not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire.'" We overrule this contention. The language quoted must be referred to the facts before the Court and those facts are not in point here because the insured owner remained the owner of the property insured, although he had conveyed the land on which it stood. To sustain plaintiff's argument upon the facts before us would be equivalent to holding that the condition which we have quoted from the policy was invalid and unenforcible. However, on the facts before us the quoted language is to be applied in defendant's favor. It may be said that a mortgagee (as plaintiff, in substance, was) owed less than one-half of the sale price of the property had a "diminished motive to guard the property against loss by fire", Crescent Ins. Co. v. Camp, 64 Tex. 521, at page 528, and that since he was out of possession and the possession was vested in his vendee, plaintiff could not very well guard the insured property against loss by fire.

Under other Points of Error plaintiff makes the contention that defendant did not tender the unearned premium and that this precluded defendant's reliance upon plaintiff's breach of the condition quoted from the policy. The policy in suit was for a term of three years. It was dated January 14, 1947, and the insured property was destroyed by fire in April, 1949. Defendant did not tender in to court the unearned premium and the parties seem to have stipulated that it was never tendered plaintiff. Plaintiff's contention is overruled. It was not necessary for the defendant to tender the premium to plaintiff in order to rely on plaintiff's breach of the condition quoted from the policy. See: Interstate Fire Ins. Co. v. Sorrells, Tex.Civ.App., 295 S.W. 242, at page 244 (Hn. 5–8); Republic Ins. Co. v. Dickson, 69 S.W.2d 599, at page 601 (Hn. 4); Rio Grande Nat'l Life Ins. Co. v. Hardware Dealers Mut. Fire Ins. Co., Tex. Civ.App., 209 S.W.2d 654.

These conclusions make it unnecessary to discuss other Points of Error filed by plaintiff. The judgment of the trial court is affirmed.